

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IMMIGRANT DEFENDERS LAW
CENTER, et al.,

               Plaintiffs,

        v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 21-0395 FMO (RAOx)

**ORDER RE: PENDING MOTIONS**

       Having reviewed and considered all the briefing filed with respect to defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 27, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**PLAINTIFFS' ALLEGATIONS**

       Plaintiffs Immigrant Defenders Law Center, Refugee and Immigrant Center for Education and Legal Services, South Texas Pro Bono Asylum Representation Project, and The Door (collectively, "plaintiffs") are legal service providers whose mission is to provide pro bono legal services and advocacy to immigrants.  (See Dkt. 14, Amended Complaint for Declaratory and Injunctive Relief ("FAC") at ¶ 2.  As part of this mission, plaintiffs serve the vast majority of unaccompanied immigrant children who enter the United States and must navigate its immigration

1   system without the help of a parent or guardian.  (See id. at ¶¶ 1-2).  According to plaintiffs,

2   defendants "have systematically failed" to provide a number of rights to which the unaccompanied

3   children are legally entitled.[1]  (See id. at ¶¶ 3-4).  Plaintiffs filed the instant action, "seek[ing] to

4   ensure that unaccompanied immigrant children . . . are restored the protections enshrined by the

5   William Wilberforce Trafficking Victims Protection Reauthorization Act ('TVPRA')[, 8 U.S.C. §

6   1232], the Due Process Clause of the Fifth Amendment to the United States Constitution, and the

7   *Flores* Settlement Agreement."[2]  (Id. at ¶ 1).

8   I.    LEGAL PROTECTIONS FOR UNACCOMPANIED CHILDREN.

9       Immigrant children who enter the country without lawful status and unaccompanied by

10  guardians ("unaccompanied children") are "entitled to a panoply of rights and procedural

11  safeguards pursuant to the *Flores* Settlement Agreement, the Homeland Security Act of 2002

12  ('HSA'), and the TVPRA."  (Dkt. 14, FAC at n. 3 & ¶ 57).  According to plaintiffs, these "three

13  sources of law govern the treatment and administrative processing" of unaccompanied children

14  and "set forth various protections, including access to *pro bono* legal services provided by

15  [organizations], like Plaintiffs, to ensure that no [unaccompanied children] are subject to removal

16  before having equal access to a developmentally-appropriate and child-accommodating

17  immigration process."  (Id.).

18      Plaintiffs allege that, under the Flores Settlement Agreement, nationwide requirements were

19  established that "govern[] the detention, treatment, and release" of unaccompanied children.  (Dkt.

20  14, FAC at ¶ 59).  The Flores Settlement Agreement requires, among several other protections,

21

22      [1]  Defendants here comprise federal departments and agencies, including the U.S. Department

23  of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), U.S. Immigration and
    Customs Enforcement ("ICE"), U.S. Enforcement and Removal Operations ("ERO"), U.S.

24  Citizenship and Immigration Services ("USCIS"), U.S. Department of Health and Human Services

25  ("HHS"), and U.S. Office of Refugee Resettlement ("ORR"), as well as individual defendants in
    their official capacities, Tae D. Johnson, Alejandro Mayorkas, Troy A. Miller, Corey A. Price, Tracy

26  Renaud, Norris Cochran, and Ken Tota (collectively, "defendants").

27      [2]  The "Flores Settlement Agreement" is a consent decree entered by a federal court in the
    Central District of California in 1997 which covers "all minors who are detained in the legal custody

28  of the [Immigration and Naturalization Service]."  (Dkt. 14, FAC at ¶ 58).

that unaccompanied children "be released 'without unnecessary delay' to the custody of an adult caregiver[.]" (Id. at ¶ 58).   Under the HSA, the key protections of the Flores Settlement Agreement, including its requirement to place each detained minor in the "least restrictive setting," were extended to all unaccompanied children.  (See id. at ¶ 60).

In 2008, Congress passed the TVPRA, which established a number of rights for unaccompanied children navigating the immigration process. (See Dkt. 14, FAC at ¶¶ 61-62). According to plaintiffs, the TVPRA guarantees all unaccompanied children several procedural and substantive rights, including: (1) proper screening by CBP for signs of human trafficking and a fear of return; (2) prompt placement in the "least restrictive setting" that is in the best interest of the child; (3) initial jurisdiction by USCIS over asylum applications; (4) an age-appropriate asylum interview; (5) placement in TVPRA-proceedings under § 240 of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, et seq., which "provide[] a clearly delineated process for immigration proceedings . . . to address child-centric needs, and afford[] opportunities to seek all avenues of relief"; (6) no reinstatement of prior removal orders; and (7) safe repatriation.  (See id. at ¶¶ 63-78).

II.   MIGRANT PROTECTION PROTOCOLS.

On December 20, 2018, the former Trump administration "announced a new policy for processing asylum seekers at the southern border: the Migrant Protection Protocols, often referred to as 'MPP' or the 'Remain in Mexico' program." (Dkt. 14, FAC at ¶ 116).  Plaintiffs allege that, under MPP, those arriving at the southern border received only a Notice to Appear ("NTA") and were promptly returned to Mexico, rather than being permitted to remain in the United States during the pendency of their asylum proceedings.  (See id.).  While these asylum seekers were in Mexico, the United States failed to "provide them with food, shelter, personal protective equipment, work, funds, transportation to and from the U.S. border, or access to legal counsel." (Id.).

On January 28, 2021, President Biden's administration suspended enrollment into MPP and then ordered the Secretary of Homeland Security to "promptly review and determine whether to terminate or modify" the MPP program. (Dkt. 14, FAC at ¶ 117).  Plaintiffs allege that President

1  Biden ordered DHS to "promptly consider a phased strategy for the safe and orderly entry into the

2  United States, consistent with public health and safety and capacity constraints, of those

3  individuals who have been subjected to MPP for further processing of their asylum claims." (Id.).

4  Nonetheless, plaintiffs aver that the "administration has warned that 'changes will take time,' and

5  MPP hearings remain on the MPP Court docket." (Id.).

6  III.    THE INSTANT ACTION.

7          Plaintiffs' suit arises from defendants' alleged systematic failures in their stewardship of

8  unaccompanied children with MPP ties ("MPP-UC").  (See Dkt. 14, FAC at ¶ 3.  According to

9  plaintiffs, "[u]nder MPP, immigrant children who initially came to the United States with a parent

10  were forced to remain in Mexico[.]"  (Id. at ¶ 5).  However, "[h]ardship, danger, and other violent

11  and unsafe circumstances in MPP have forced these children to enter the United States on their

12  own[.]"  (Id.).  While unaccompanied children are "legally entitled to, and ordinarily receive,

13  processes designed to protect their wellbeing and safeguard their legal rights," plaintiffs allege that

14  defendants are enforcing MPP procedures against unaccompanied children in violation of the

15  TVPRA and contrary to their own policies which exclude such children from MPP.  (Id. at ¶ 6);

16  (see id. at ¶¶ 135-214).

17          Plaintiffs allege that defendants "have failed to adopt necessary procedures to ensure that

18  MPP-UC are able to access their rights under the TVPRA."  (Dkt. 14, FAC at ¶ 7).  Specifically,

19  plaintiffs allege the following failures by defendants with respect to MPP-UC:  (1) "ERO does not

20  consistently issue and serve MPP-UC" with a legally sufficient NTA as required under the TVPRA

21  (a "TVPRA-NTA"); (2) "ORR and ERO condition the release of MPP-UC on appellate and other

22  legal action" in violation of the Flores Settlement Agreement and the TVPRA; (3) "ICE allows MPP-

23  UC to be ordered removed in absentia"; (4) "DHS treats MPP-UC as removal priorities"; (5)

24  "defendants unsafely repatriate MPP-UC"; and (6) "USCIS rejects jurisdiction over asylum

25  applications filed by MPP-UC with removal orders, and is silent as to how it treats all other MPP-

26  UC[.]"  (See id. at ¶¶ 143-49, 154-58, 164-68, 179-85, 193-204) (formatting omitted).

27          Plaintiffs assert the following claims against defendants: (1) violation of the Due Process

28  Clause of the Fifth Amendment to the United States Constitution; (2) violation of the Administrative

1    Procedure Act ("APA"), 5 U.S.C. § 706(1), for failure to act as required under the TVPRA; (3)

2    violation of the APA, 5 U.S.C. § 706(2), for failure to implement policies in violation of the TVPRA;

3    (4) violation of MPP policies, the <u>Accardi</u> Doctrine, and the APA, 5 U.S.C. § 706(2), by relying on

4    MPP proceedings to deny protections guaranteed by the TVPRA; and (5) violation of the APA, 5

5    U.S.C. § 706(2), for conditioning access to the TVPRA.  (<u>See</u> Dkt. 14, FAC at ¶¶ 226-64).

6                                                      **LEGAL STANDARDS**

7    I.        RULE 12(b)(1).

8              A defendant may seek to dismiss a complaint for lack of subject-matter jurisdiction under

9    Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3]  "Rule 12(b)(1) jurisdictional attacks can

10   be either facial or factual."  <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack,

11   the challenger asserts that the allegations contained in a complaint are insufficient on their face

12   to invoke federal jurisdiction."  <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir.

13   2004).  The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)[.]"

14   <u>Leite v. Crane Co.</u>, 749 F.3d 1117, 1121 (9th Cir. 2014).  "By contrast, in a factual attack, the

15   challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal

16   jurisdiction." <u>Safe Air for Everyone</u>, 373 F.3d at 1039.  "In resolving a factual attack on jurisdiction,

17   the district court may review evidence beyond the complaint without converting the motion to

18   dismiss into a motion for summary judgment."  <u>Id.</u>  "The court need not presume the truthfulness

19   of the plaintiff's allegations."  <u>Id.</u>  "Once the moving party has converted the motion to dismiss into

20   a factual motion by presenting affidavits or other evidence properly brought before the court, the

21   party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden

22   of establishing subject matter jurisdiction."  <u>Savage v. Glendale Union High Sch., Dist. No. 205,</u>

23   <u>Maricopa Cty.</u>, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).

24

25

26

27   _____

28   [3]  Unless otherwise indicated, all further "Rule" references are to the Federal Rules of Civil
     Procedure.

II.    RULE 12(b)(6).

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007) ("Twombly"); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) ("Iqbal"); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 550 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 267, 114 S.Ct. 807, 810 (1994) (plurality opinion), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will

1  necessarily defeat the claim.  Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

2                                          **DISCUSSION**

3        Defendants' Motion seeks to dismiss plaintiffs' FAC on the grounds that: (1) plaintiffs lack

4  standing to pursue their claims; (2) the court lacks jurisdiction pursuant to 8 U.S.C. § 1252; and

5  (3) plaintiffs have failed to state a claim.  (See Dkt. 27, Motion at 3-24).

6  I.     STANDING.

7        A.     Article III Standing.

8        Defendants first argue that plaintiffs, as organizations, lack the necessary Article III standing

9  to bring their claims.  (See Dkt. 27, Motion at 4-5).  Defendants contend that plaintiffs have "not

10  adequately allege[d] that [they] have been *forced* to divert resources or that any Government

11  actions have jeopardized their client base or funding[.]"  (Id. at 4).

12        In order to assert Article III standing, "[a] plaintiff must allege personal injury fairly traceable

13  to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."

14  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342, 126 S.Ct. 1854, 1861 (2006) (internal

15  quotation marks omitted).  "Organizations can assert standing on behalf of their own members,

16  or in their own right[.]"  East Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 662 (9th Cir. 2021)

17  ("EBSC III") (citations omitted).  "[A]n organization has direct standing to sue where it establishes

18  that the defendant's behavior has frustrated its mission and caused it to divert resources in

19  response to that frustration of purpose."  Id. at 663; see also East Bay Sanctuary Covenant v.

20  Trump, 932 F.3d 742, 766-67 (9th Cir. 2018) ("EBSC I") (plaintiffs may also "demonstrate

21  organizational standing" by showing that a government policy "will cause them to lose a substantial

22  amount of funding").

23        Here, plaintiffs are legal service providers with a shared mission to provide pro bono

24  services to, and advocacy for, the "most marginalized immigrant refugee communities[,]" including

25  "full-scale legal representation, case management support, and other legal services" for hundreds

26  of unaccompanied immigrant children.  (Dkt. 14, FAC at ¶ 17 & 19); (see id. at ¶¶ 24, 29, 31, 34,

27  37, 40).  Plaintiffs have been "subcontracted" by the government to "protect [unaccompanied

28  children's] right to access to counsel, as guaranteed by the TVPRA."  (Id. at ¶ 93) (citing 8 U.S.C.

                                                    7

§ 1232(c)(5)).   Having set forth their organizational duties and responsibilities to all unaccompanied children, plaintiffs then allege a series of acts – and failures to act – by defendants which effectively deny mandatory TVPRA protections to a new and unforeseeable subset of plaintiffs' clients, i.e., unaccompanied immigrant children who are subject to MPP.  (See id. at ¶¶ 143-49, 154-58, 164-68, 179-85, 193-204).  As a result of defendants' actions, plaintiffs allege that they "continue to divert resources and take drastic measures to ensure defendants do not thwart TVPRA rights" for their clients.  (Id. at p. 78); (see id. at ¶¶ 215-25).  For example, plaintiffs must now "engage in litigation outside of their normal areas of expertise[;]" "divert critical resources away from other cases and clients because representation of an MPP-unaccompanied child requires far more time and resources to litigate . . . [given] the complexity of the issues involved[;]" and they must often "reallocate existing staff" in order to adequately provide coverage on MPP-UC cases due to the "emergency nature of the work[.]"  (See id. at ¶¶ 217-18, 222).

Here, plaintiffs have more than adequately alleged that "defendant[s'] behavior has frustrated [plaintiffs'] mission and caused [them] to divert resources in response to that frustration of purpose."  EBSC III, 993 F.3d at 663; see also Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1040 (9th Cir. 2015) ("[A] diversion-of-resources injury is sufficient to establish organizational standing at the pleading stage, even when it is 'broadly alleged.'").  Given the myriad ways plaintiffs have had to divert resources to adequately advocate for unaccompanied children subject to MPP, there is no doubt that defendants' alleged actions have "impaired [plaintiffs'] ability to provide [legal] services" to plaintiffs' clients, and "there can be no question that the organization[s] ha[ve] suffered injury in fact."  Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124 (1982); see, e.g., EBSC III, 993 F.3d at 663 (finding standing where new administrative rule barring access to asylum procedures for certain migrants caused diversion of resources for organizations formed to assist asylum seekers); El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev., 959 F.2d 742, 748 (9th Cir. 1991) (allegations that government policy frustrated organizational goals and required plaintiffs to expend resources they would otherwise spend in other ways were sufficient to confer standing).

B.     Zone of Interests.

Defendants also contend that plaintiffs do not have standing to assert their claims under the APA because their claims are "outside the zones of interests for the statutes [plaintiffs] have cited in their FAC as forming the basis of their action[.]"  (Dkt. 27, Motion at 6); (see id. at 6-8).

"[A] statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked."  Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129, 134 S.Ct. 1377, 1388 (2014) (internal quotation marks omitted).  "The breadth of the zone-of-interests test varies, depending on the provisions of law at issue.  Under the APA, the test is not especially demanding.  The zone-of-interests analysis forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue."  EBSC III, 993 F.3d at 667 (citations and internal quotation marks omitted).  "[B]ecause the APA provides a cause of action only to those 'suffering legal wrong because of agency action . . . within the meaning of a relevant statute,' the relevant zone of interest is that of the INA" and the TVPRA.[4] Id. (quoting 5 U.S.C. § 702).

Here, plaintiffs' interests in securing TVPRA protections for unaccompanied immigrant children subject to MPP is consistent with the TVPRA's purpose of "[p]reventing the trafficking of unaccompanied [noncitizen] children found in the United States by ensuring that they are not repatriated into the hands of traffickers or abusive families, and are well cared for."  H.R. Rep. No. 110-430 at 35 (2007); see EBSC III, 993 F.3d at 668 (The court is "not limited to considering the specific statute under which plaintiffs sued, but may consider any provision that helps [it] to understand Congress' overall purposes in enacting the statute.") (internal quotation marks omitted); see, e.g., EBSC I, 932 F.3d at 768 (finding organizational plaintiffs in the INA's zone of

---

[4] The court declines defendants' invitation to rely on INS v. Legalization Assistance Project of L.A. Cty., 510 U.S. 1301, 114 S.Ct. 422 (1993) (O'Connor, J., in chambers), (see Dkt. 27, Motion at 6-7), for the same reasons described by the Ninth Circuit in a similar circumstance.  See EBSC I, 932 F.3d at 769 n. 10 (declining to rely on "non-binding and concededly 'speculative'" opinion in INS because the interest asserted in that case was "markedly different" from the interest asserted in the instant case).

1    interests because their "interest in aiding immigrants seeking asylum is consistent with the INA's

2    purpose to establish the statutory procedure for granting asylum to refugees") (internal quotation

3    marks and alterations omitted).  Under the TVPRA, the government "shall ensure, to the greatest

4    extent practicable[,] . . . that all unaccompanied [noncitizen] children who are or have been in the

5    custody of the Secretary of [HHS] or the Secretary of Homeland Security . . . have counsel to

6    represent them in legal proceedings" and that, "[t]o the greatest extent practicable, the Secretary

7    of [HHS] shall make every effort to utilize the services of pro bono counsel[.]"  8 U.S.C. §

8    1232(c)(5).  Indeed, plaintiffs have been subcontracted by ORR specifically to fill this role

9    mandated by the TVPRA.[5]  (See Dkt. 14, FAC at ¶¶ 19, 26, 33, 41, 72); EBSC I, 932 F.3d at 768

10   (organizational plaintiffs in zone of interest where "Congress took steps to ensure that pro bono

11   legal services of the type that the Organizations provide are available to" those protected by the

12   relevant statutes).

13        Given that the zone-of-interests test for APA claims is not "especially demanding," Lexmark,

14   572 U.S. at 130, 134 S.Ct. at 1389 (internal quotation marks omitted), the court is persuaded that

15   plaintiffs have more than met their burden to show that their interests are, at a minimum,

16   "marginally related to" and "arguably within" the scope of the relevant statutes.  See EBSC III, 993

17   F.3d at 668 (internal quotation marks omitted).

18   II.    JURISDICTION.

19        Defendants contend that the court lacks jurisdiction to adjudicate plaintiffs' claims under

20   three provisions of 8 U.S.C. § 1252.[6]  (See Dkt. 27, Motion at 9-17).[7]

21   _____

22        [5]  Relying on Sure-Tan, Inc. v. Nat'l Lab. Rel. Bd., 467 U.S. 883, 104 S.Ct. 2803 (1984),
     defendants argue that "plaintiffs have no judicially cognizable interest in the enforcement of
23   immigration laws[.]" (Dkt. 27, Motion at 8-9) (formatting omitted).  However, Sure-Tan, Inc.
     "describe[s] limitations on third-party, not organizational, standing[,]" EBSC III, 993 F.3d at 664 n.
24   6, which plaintiffs do not assert here.  (See Dkt. 30, Plaintiffs' Opposition to Defendants' Motion
     to Dismiss [] ("Opp.") at 8 n. 4).
25

26        [6]  Unless otherwise indicated, all section references in § II. are to Title 8 of the United States
     Code.
27

28        [7]  Defendants also argue that "the court lacks jurisdiction to enforce any portion of the
     Flores Settlement Agreement" because the Flores consent decree was entered by – and is

A.   8 U.S.C. § 1252(b)(9).

First, defendants assert that the court lacks jurisdiction to review plaintiffs' claims pursuant to § 1252(b)(9),[8] which they contend is an "unmistakable zipper clause that channels judicial review of all questions of law and fact, including both constitutional and statutory challenges into a [petition for review] once administrative immigration proceedings have ended." (Dkt. 27, Motion at 9) (internal quotation marks omitted).  According to defendants, "[t]o the extent that the[ir] challenged actions are linked to removal proceedings and orders of removal, they are barred by [§] 1252(b)(9)." (Id. at 10).

Contrary to defendants' assertion that the reach of § 1252(b)(9) is "capacious" and "broad," (see Dkt. 27, Motion at 10), "[t]he Supreme Court has [recently] instructed that § 1252(b)(9) is a 'targeted' and 'narrow' provision that is certainly not a bar where . . . the parties are not challenging any removal proceedings." Gonzalez v. U.S. Immigr. & Customs Enf't, 975 F.3d 788, 810 (9th Cir. 2020) (internal quotation marks omitted) (citing Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 140 S.Ct. 1891, 1907 (2020) ("Regents")).  The pertinent inquiry is not whether the challenged action "is an action taken to remove a [noncitizen] but whether the legal questions in this case arise from such an action." Jennings v. Rodriguez, 138 S.Ct. 830, 841 n. 3 (2018) (emphasis omitted) (plurality op.); see J.E.F.M. v. Lynch, 837 F.3d 1026, 1032 (9th Cir. 2016) ("[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9).").

pending before – a different court. (Dkt. 27, Motion at 17) (formatting omitted).  However, "[u]nder settled law, there is federal-question jurisdiction over the Flores claim[s]" because there is "no general jurisdictional bar to another district court's taking part in enforcing a consent decree when one party sues to enforce its terms." E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec., 950 F.3d 177, 191-94 (3d Cir. 2020) (holding that district court had jurisdiction to hear claims regarding breaches of the consent decree in Flores).  Because there is no specific challenge to the sufficiency of plaintiffs' allegations regarding defendants' breaches of the Flores Settlement Agreement, (see, generally, Dkt. 27, Motion), the court will not directly address that issue in this Order.

[8]  Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).

Here, plaintiffs are challenging defendants' "fail[ure] to provide any safeguards to protect MPP-UC's ability to access their rights under the TVPRA." (Dkt. 14, FAC at ¶ 232); (see id. at ¶¶ 226-64).  Such safeguards include: "(1) the right to prompt placement in the least restrictive setting; (2) the right to seek TVPRA-asylum through a non-adversarial process before a USCIS asylum officer; (3) the right to have USCIS exercise initial jurisdiction over the child's TVPRA-asylum applications rather than the immigration court; (4) waiver of the one-year filing requirement; and (5) the right to safe repatriation if all forms of relief from removal are eventually denied." (Id. at ¶ 230).  Under the circumstances here, plaintiffs "do not request review of an order of removal, challenge the decision to seek removal, or contest any step that has been taken by the Government to determine [MPP-UC's] removability[.]"  Al Otro Lado, Inc. v. McAleenan, 423 F.Supp.3d 848, 863 (S.D. Cal. 2019) (holding that § 1252(b)(9) did not bar jurisdiction); Jennings, 138 S.Ct. at 841 (same); (see Dkt. 30, Opp. at 9, 12, 15) (disclaiming direct challenge to removal orders and removability).  Thus, because plaintiffs' allegations do not "seek to enjoin any specific removal proceeding[,]" § 1252(b)(9) does not deprive the court of jurisdiction, "even if the [relief sought] might ultimately have an impact on some removals."  NWDC Resistance v. Immigr. & Customs Enf't, 493 F.Supp.3d 1003, 1013 (W.D. Wash. 2020).

    B.    8 U.S.C. § 1252(f).

Second, defendants claim that the court lacks jurisdiction pursuant to § 1252(f). (See Dkt. 27, Motion at 11-13).  Under this provision, "[r]egardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-1232] other than with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated."  8 U.S.C. § 1252(f)(1).  Defendants contend that § 1252(f) deprives the court of jurisdiction because the relief sought by plaintiffs seeks to "enjoin or restrain the operation of" 8 U.S.C. §§ 1221-1232, and because plaintiffs are not "an individual against whom proceedings under this part have been initiated[.]"  (Dkt. 27, Motion at 11).

1    Because the precise form of plaintiffs' requested injunctive relief is not clearly defined at

2    this stage of the case, it is premature to rule on whether § 1252(f) applies at this time.  Indeed,

3    defendants' arguments as to § 1252(f)'s bar on injunctive relief are more appropriately addressed

4    in connection with plaintiffs' Motion for Preliminary Injunction.  The court notes, however, that §

5    1252(f) "prohibits only injunction of 'the operation of' the detention statutes [of the INA], not

6    injunction of a violation of the statutes."  Rodriguez v. Hayes, 591 F.3d 1105, 1120 (9th Cir. 2010).

7    To the extent plaintiffs establish that the remedy they seek addresses violations of the relevant

8    statutes, § 1252(f) will not be an obstacle to relief.  See, e.g, Padilla v. U.S. Immigr. & Customs

9    Enf't, 354 F.Supp.3d 1218, 1231 (W.D. Wash. 2018) (rejecting argument that § 1252(f) barred

10   claims for injunctive relief where plaintiffs sought "an injunction against actions and policies that

11   violate [8 U.S.C. §§ 1221-1232] and associated constitutional protections"); but see, e.g., Vazquez

12   Perez v. Decker, 2019 WL 4784950, *6 (S.D.N.Y. 2019) (denying a motion for preliminary

13   injunction under § 1252(f) where "requiring initial master calendar hearings to be held within a

14   prescribed time period [ ] would restrain the operation of at least [§] 1229(b), which provides no

15   such time period").  Nevertheless, these claims would still survive because § 1252(f) is not a bar

16   to plaintiffs' request for declaratory relief.  See Rodriguez, 591 F.3d at 1119 ("It is simply not the

17   case that [§] 1252(f) bars Petitioner from receiving declaratory relief[.]").

18        C.    8 U.S.C. § 1252(g).

19        Section 1252(g) deprives courts of jurisdiction "to hear any cause or claim by or on behalf

20   of any [noncitizen] arising from the decision or action by the Attorney General to commence

21   proceedings, adjudicate cases, or execute removal orders against any [noncitizen.]"  8 U.S.C. §

22   1252(g).  The Supreme Court has held that this provision is to be construed narrowly and "applies

23   only to three discrete actions that the Attorney General may take: her 'decision or action' to

24   commence proceedings, adjudicate cases, or execute removal orders."  Reno v. Am.-Arab Anti-

25   Discrimination Comm., 525 U.S. 471, 482, 119 S.Ct. 936, 943 (1999) ("AADC") (internal quotation

26   marks omitted); see Regents, 140 S.Ct. at 1907 (reaffirming "narrow" interpretation of § 1252(g)

27   and rejecting notion that it imposes a "general jurisdictional limitation") (internal quotation marks

28

1  omitted).   Defendants contend that plaintiffs' "FAC challenges specific acts or omissions

2  concerning" all three of the "discrete actions" subject to § 1252(g).  (Dkt. 27, Motion at 14).

3      The Supreme Court has emphasized that § 1252(g) does not cover the "many other

4  decisions or actions that may be part of the deportation process[.]"  AADC, 525 U.S. at 482, 119

5  S.Ct. at 943.  To the extent defendants challenge plaintiffs' due process claim, § 1252(g) does not

6  bar "general collateral challenges to unconstitutional practices and policies used by [defendants]."

7  Walters v. Reno, 145 F.3d 1032, 1052 (9th Cir. 1998) (internal quotation marks omitted).  "The

8  Ninth Circuit has, on a number of occasions, construed [§ 1252(g)] and has consistently held that

9  district courts have jurisdiction when . . . [plaintiffs] do not directly challenge their orders of

10 removal[.]"  Chhoeun v. Marin, 306 F.Supp.3d 1147, 1158 (C.D. Cal. 2018).  Here, plaintiffs' due

11 process claim does not appear to challenge the validity of any removal proceedings or orders

12 therein, but instead requests the implementation of rights under the TVPRA for unaccompanied

13 children during removal proceedings. (See Dkt. 14 FAC at ¶¶ 226-33).  Plaintiffs underscore this

14 point in their opposition.  (See Dkt. 30, Opp. at 12) (Plaintiffs "do[] not challenge the validity of any

15 underlying MPP removal orders or proceedings.").   Under the circumstances, the court is

16 persuaded that it may exercise jurisdiction over plaintiffs' due process claim.  See, e.g., NWDC

17 Resistance, 493 F.Supp.3d at 1011 ("A narrow reading of [§] 1252(g) does not apply to

18 constitutional challenges brought by one who is not the [noncitizen] subject to the three discrete

19 decisions articulated in that statute, or one who is not bringing a challenge to such actions on the

20 [noncitizen's] behalf.");  Chhoeun, 306 F.Supp.3d at 1159 (Section 1252(g) did not preclude

21 jurisdiction to consider "claims regarding due process violations" seeking "'a day in court' to

22 comport with due process").

23      Nor is the court persuaded that § 1252(g) divests jurisdiction over plaintiffs' APA claims.

24 Defendants argue that § 1252(g) bars challenges to defendants' alleged failure to issue TVPRA-

25 compliant NTAs and their "intent to continue to subject [unaccompanied children] to [§] 1229(a)

26 removal proceedings" that were initiated before a child was designated as unaccompanied.  (See

27 Dkt. 27, Motion at 14-15).   However, defendants have not provided any binding authority to

28 establish that plaintiffs' request for issuance of TVPRA-compliant NTAs – once defendants make,

1  or have already made, the decision to commence proceedings – would implicate § 1252(g).  (See,

2  generally, Dkt. 27, Motion); (Dkt. 34, Defendant's Reply [ ] ("Reply")).  In any event, construing the

3  FAC in the light most favorable to plaintiffs, the court is persuaded that plaintiffs' claims

4  challenging the requirement of TVPRA-compliant NTAs for unaccompanied children present "a

5  purely legal question, which does not challenge the Attorney General's discretionary authority" to

6  issue an NTA and commence proceedings in the first instance; the claim only challenges whether

7  the NTAs must contain certain information if issued.  See United States v. Hovsepian, 359 F.3d

8  1144, 1155 (9th Cir. 2004) (en banc) (A district court may consider a "purely legal question" that

9  does not challenge discretionary authority, "even if the answer to that legal question . . . forms the

10 backdrop against which the Attorney General later will exercise discretionary authority."); see also

11 Arce v. United States, 899 F.3d 796, 800 (9th Cir. 2018) (The Ninth Circuit is "bound by [its] own

12 precedent that limits § 1252(g)'s scope to discretionary decisions that the Attorney General

13 actually has the power to make, as compared to the violation of his mandatory duties.").

14       With respect to plaintiffs' challenge to defendants' intent to continue to subject

15 unaccompanied children to MPP proceedings, (see Dkt. 14, FAC at ¶ 179), it appears that this

16 challenge may implicate a decision to "adjudicate cases" rather than one to "commence

17 proceedings."  (See Dkt. 34, Reply at 10).  However, "the Ninth Circuit has recognized that [§]

18 1252(g)'s jurisdiction-stripping over decisions or actions to 'adjudicate' cases does not remove

19 federal jurisdiction to grant injunctive relief to [plaintiffs] challenging deportation procedures."

20 Franco-Gonzales v. Holder, 767 F.Supp.2d 1034, 1049 (C.D. Cal. 2010); see also Kyu Seock Lee

21 v. U.S. Citizenship & Immigr. Servs., 2011 WL 10858556, *4 (C.D. Cal. 2011) ("Where the

22 gravamen of the claim does not arise from the Attorney General's decision or action to commence

23 proceedings, adjudicate cases, or execute removal orders, [§] 1252(g) does not apply.").  Here,

24 the gravamen of plaintiffs' case is not a challenge to defendants' discretion to adjudicate removal

25 proceedings, but rather a challenge to the ancillary procedures defendants implement – or fail to

26 implement – in such proceedings and whether these practices run afoul of the TVPRA.  (See Dkt.

27

28

14, FAC at ¶¶ 234-64).  Thus, § 1252(g) does not preclude jurisdiction over plaintiffs' APA claims.[9] See, e.g., Inland Empire - Immigrant Youth Collective v. Nielsen, 2018 WL 4998230, *12 (C.D. Cal. 2018) (government practice challenged under APA was "independent of the decision to commence or adjudicate removal proceedings" and not subject to § 1252(g)); Barahona-Gomez v. Reno, 236 F.3d 1115, 1120-21 (9th Cir. 2001) (holding that § 1252(g) does not bar review of decisions or actions occurring during the formal adjudicatory process because they are separate from the "decision to adjudicate").

Finally, as for defendants' contention that § 1252(g) bars plaintiffs' purported challenges to decisions to execute removal orders, (see Dkt. 27, Motion at 15-16), plaintiffs expressly state that they "do not ask this Court to invalidate MPP removal orders issued against their clients[, and] only ask this Court to require Defendants to discharge their non-discretionary obligations under the TVPRA and ensure due process." (Dkt. 30, Opp. at 15).  Under the circumstances, and based on plaintiffs' representations, the court is persuaded that § 1252(g) does not present a bar here either.  See, e.g., Wong v. United States, 373 F.3d 952, 964-65 (9th Cir. 2004) (holding that § 1252(g) was not implicated where plaintiff "disclaim[ed] any challenge to the execution of the removal itself, but rather assert[ed] that her claims implicate[d] only actions other than that removal, or the commencement of proceedings"); Rodriguez Vasquez v. Wolf, 830 F.Appx. 556, 557 (9th Cir. 2020) ("Because the Appellants here challenge the manner of their removal, and not the discretionary decision to remove them, § 1252(g) does not bar this suit.").

III.   SUFFICIENCY OF PLAINTIFFS' CLAIMS.

Defendants challenge the sufficiency of plaintiffs' claims, arguing that each must be dismissed for failure to state a claim.  (See Dkt. 27, Motion at 17-24).

First, defendants argue that plaintiffs' due process claim fails because plaintiffs "do not allege – and could not allege – prejudice to [unaccompanied children] because of Defendants'

---

[9]   However, to the extent plaintiffs may attempt to seek injunctive relief which challenges defendants' discretion to begin or continue prosecution of proceedings against their clients, such relief may be precluded by § 1252(g).  See, e.g., Hanggi v. Holder, 563 F.3d 378, 383 (8th Cir. 2009) ("A decision to terminate proceedings, like a decision to forgo proceedings, implicates the Attorney General's enforcement discretion.").

actions." (Dkt. 27, Motion at 18).  Defendants contend that, "[a]s a general rule, an individual may obtain relief for a due process violation only if he shows that the violation caused him prejudice[.]" (Id.) (quoting Gomez-Velazco v. Sessions, 879 F.3d 989, 993 (9th Cir. 2018)).  However, the Ninth Circuit has made clear that this "rule rests on the view that the results of a proceeding should not be overturned if the outcome would have been the same even without the violation."  Gomez-Velasco, 879 F.3d at 993.  As noted above, see supra at § II.C., plaintiffs' claim does "not challenge or seek to invalidate the outcome of the underlying MPP proceedings." (Dkt. 30, Opp. at 16).  Again, plaintiffs are seeking only the various statutory protections mandated to unaccompanied children by the TVPRA as they navigate the removal and asylum processes. (See Dkt. 14, FAC at ¶ 230-32).  Thus, plaintiffs need not make a showing of prejudice to state their due process claim.  See, e.g., Hernandez v. Sessions, 872 F.3d 976, 993-94 (9th Cir. 2017) (not requiring showing of prejudice in due process challenge to bond determination process).

Second, defendants contend that plaintiffs' claim under § 706(1) of the APA for failure to act as required under the TVPRA must be dismissed because plaintiffs "have not identified . . . any 'unequivocal command' concerning the issuance of a 'TVPRA-NTA' . . . or a second NTA after a minor returns unaccompanied to the United States after already being subject to removal proceedings or a final order of removal." (Dkt. 27, Motion at 19).  Defendants also challenge plaintiffs' allegation of an "unequivocal command" with respect to plaintiffs' claims regarding the placement of unaccompanied children in the least restrictive setting. (See id. at 19-20).  However, plaintiffs have adequately alleged a non-discretionary and discrete duty on defendants to serve an NTA on unaccompanied children which complies with the TVPRA. (See Dkt. 14, FAC at ¶¶ 70, 83-87, 109-12); (Dkt. 30, Opp. at 17-18).  Moreover, the court agrees that plaintiffs' "factual allegations sufficiently establish that ORR delays release of MPP-unaccompanied children to approved sponsors in violation of its mandatory duty." (Dkt. 30, Opp. at 18); (see Dkt. 14, FAC at ¶¶ 154-58); Berg, 412 F.3d at 1125 ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.") (internal quotation marks omitted).

Third, defendants contend that plaintiffs' claim under § 706(2) of the APA for failure to implement policies in violation of the TVPRA must be dismissed because plaintiffs' "challenge to

1   Defendants' purported *inaction* is not a cognizable claim under [§] 706(2)[.]"  (Dkt. 27, Motion at

2   20-22).  According to defendants, plaintiffs have failed to allege that defendants reached "any sort

3   of final decision *not* to provide [unaccompanied children] subject to MPP with any" of their TVPRA

4   protections.  (See id. at 20-21).  Defendants' contentions are unpersuasive.

5           As an initial matter, defendants' contention that a challenge to their alleged inaction cannot

6   be cognizable under § 706(2) of the APA is unpersuasive because the APA defines "agency

7   action" as also including a "failure to act[.]"  See 5 U.S.C. § 551(13); Friends of Yosemite Valley

8   v. Scarlett, 439 F.Supp.2d 1074, 1089 (E.D. Cal. 2006) ("[W]hether Plaintiffs rely on [§] 706(1) or

9   706(2) is immaterial[] because . . . an agency action includes both action and inaction."); see, e.g.,

10  Ramirez v. U.S. Immigr. & Customs Enf't, 310 F.Supp.3d 7, 25-26 (D.D.C. 2018) (reviewing §

11  706(2) claim for "fail[ure] to consider placements for each Plaintiff in the 'least restrictive setting'

12  available" pursuant to the TVPRA).

13          As to whether plaintiffs have alleged a "final agency action," they must meet two conditions:

14  (1) "the action must mark the consummation of the agency's decisionmaking process"; and (2) "the

15  action must be one by which rights or obligations have been determined or from which legal

16  consequences will flow[.]"  Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 1168 (1997)

17  (internal quotation marks omitted).  With respect to the first condition, plaintiffs put forth "specific

18  factual allegations demonstrating" that defendants' actions and inactions deprived unaccompanied

19  children of rights guaranteed to them by the TVPRA and that defendants' "policies and/or practices

20  are not tentative or interlocutory in nature, as [defendants] ha[ve] already implemented them."

21  Lucas R. v. Azar, 2018 WL 7200716, *8 (C.D. Cal. 2018) (denying motion to dismiss § 706(2)

22  claim); (see, e.g., Dkt. 14, FAC at ¶¶ 156, 164, 195, 243-47).  Moreover, a denial of TVPRA

23  protections to unaccompanied children constitutes a decision from which "legal consequences"

24  will flow.[10]   See, e.g., L.V.M. v. Lloyd, 318 F.Supp.3d 601, 612 & n. 7 (S.D.N.Y. 2018)

25

26          [10]  To the extent defendants challenge plaintiffs' claims as an improper "broad programmatic
27  attack," (see Dkt. 27, Motion at 22), defendants "confuse aggregation of similar, discrete purported
    injuries – claims that many people were injured in similar ways by the same type of agency action
28  – for a broad programmatic attack."  Ramirez, 310 F.Supp.3d at 21.

                                                    18

1   (implementation of ORR review process which "cause[d] systemic, unjustified delays in the []

2   release process" had legal consequence for unaccompanied minor); (Dkt. 14, FAC at ¶¶ 111, 148-

3   56). Thus, plaintiffs have sufficiently stated their third claim for relief. See, e.g., Al Otro Lado, Inc.

4   v. McAleenan, 394 F.Supp.3d 1168, 1207-08 (S.D. Cal. 2019) (plaintiffs' allegations regarding

5   implementation of a policy denying asylum access adequately stated a § 706(2) claim).

6          Fourth, defendants assert that plaintiffs' claim under § 706(2) of the APA for "violation of

7   MPP policies, the *Accardi* Doctrine, and the APA must be dismissed" because "it is unsupported

8   by the facts [plaintiffs] allege."[11]   (Dkt. 27, Motion at 22) (formatting omitted).   Specifically,

9   defendants contend that while "Plaintiffs argue that Defendants violate their own policies . . .

10  [which] stat[e] that unaccompanied minors will not be subject to MPP[,] . . . the FAC does not

11  allege that any unaccompanied minors are being placed in MPP[.]" (Id.) (internal quotation marks

12  omitted).  However, the court is persuaded that plaintiffs have adequately stated this claim through

13  allegations that defendants subject, or have subjected, unaccompanied children to MPP in

14  violation of previously implemented policies.[12] (See, e.g., Dkt. 14, FAC at ¶¶ 118-20, 140-42, 179-

15  92, 253).

16         Finally, defendants challenge plaintiffs' fifth claim for relief under § 706(2) of the APA for

17  conditioning access to the TVPRA on the ground that this claim "lacks plausible factual support."

18  (See Dkt. 27, Motion at 23-24).  However, defendants appear to mischaracterize this claim as

19  challenging defendants' interference with access to counsel, (see id.), but plaintiffs do not make

20  such a claim.  Rather, plaintiffs allege that defendants "condition release of MPP-unaccompanied

21  children to approved sponsors, or placement in the 'least restrictive setting,' on evidence that

22

23         [11]   In their Reply, defendants argue that the policies relied upon by plaintiffs for their
24  Accardi claim "have been rescinded (or will be immediately rescinded)."  (Dkt. 34, Reply at 17).
     If true, defendants are free to raise this argument at summary judgment.

25         [12]  Defendants request that CBP and Troy Miller be dismissed because plaintiffs "have failed
26  to adequately allege that CBP has violated its own policies."  (Dkt. 27, Motion at 24).  However,
     given plaintiffs' allegations tying CBP's "discrete and investigatory reporting obligations" to a
27  "breakdown in Defendants' normal reporting requirements" which has caused MPP-related issues
     for plaintiffs' clients, (see Dkt. 14, FAC at ¶¶ 165, 168, 251-57), the court declines to dismiss CBP
28  and Troy Miller at this time.

1   Plaintiffs are representing the child in the MPP proceeding."  (Dkt. 30, Opp. at 24); (see, e.g., Dkt.

2   14, FAC at ¶¶ 154-58).  Given that the TVPRA mandates that unaccompanied children "shall be

3   promptly placed in the least restrictive setting that is in the best interest of the child[,]" 8 U.S.C. §

4   1232(c)(2)(A), the court is persuaded that plaintiffs have adequately stated this claim.[13]

5   IV.    MOTION FOR PRELIMINARY INJUNCTION.

6          Shortly after defendants filed the instant Motion, plaintiffs filed a Motion for Preliminary

7   Injunction (Dkt. 29, "PI Motion") seeking a preliminary injunction with respect to their First, Third,

8   and Fourth Claims for Relief.  (See  Dkt. 29-1, [Plaintiffs'] Memorandum of Points and Authorities

9   ("Memo") at 12-20); (Dkt. 14, FAC at ¶¶ 226-33, 243-57).  Given the court's ruling with respect to

10  jurisdiction under 8 U.S.C. § 1252(f), see supra at § II.B., the PI Motion will be denied without

11  prejudice.[14]  Counsel for the parties shall meet and confer in person or via video conference with

12  respect to plaintiffs' motion for preliminary injunction.  Plaintiffs' renewed motion for preliminary

13  injunction shall address the applicability of 8 U.S.C. § 1252(f) as to each specific item of relief

14  requested.  The items of relief requested by plaintiffs must be specific enough so that the court

15  can determine whether plaintiffs seek to "enjoin or restrain the operation of" 8 U.S.C. §§ 1221-

16  1232.  See 8 U.S.C. § 1252(f); Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.,

17  859 F.2d 681, 685 (9th Cir. 1988) (Federal Rule of Civil Procedure 65(d) "requires that injunctions

18  shall be specific in terms; and shall describe in reasonable detail the act or acts sought to be

19  restrained.") (internal quotation marks and alterations omitted).

20

21

22       [13]  Defendants' request to be relieved "from answering the irrelevant introductory allegations,
    irrelevant statutory background allegations, unnecessary factual detail, and irrelevant
23  allegations[,]"  (see Dkt. 27, Motion at 24), is denied.  The FAC "is logically organized, divided into
    a description of the parties, a chronological factual background, and a presentation of enumerated
24  legal claims, each of which lists the liable Defendants and legal basis therefor. . . .  [T]he
    Defendants should have no difficulty in responding to the claims with an answer[.]"  Hearns v. San
25  Bernardino Police Dep't, 530 F.3d 1124, 1132 (9th Cir. 2008).

26
         [14]  Because the jurisdictional issues were raised and discussed in connection with the instant
27  Motion, which was filed before the PI Motion, plaintiffs did not address the jurisdictional issues in
    connection with the PI Motion.  (See, generally, Dkt. 29, PI Motion); (Dkt. 29-1, Memo); (Dkt. 33,
28  Plaintiff's Reply [ ]).

1    In addition, plaintiffs' request for injunctive relief shall take into account any relevant

2    representations plaintiffs made in their opposition to defendants' Motion.  (See, e.g., Dkt. 30, Opp.

3    at 15) ("Plaintiffs . . . do not ask this Court to invalidate MPP removal orders[.]").  Finally,

4    defendants have raised a number of new developments which they claim have mooted portions

5    of plaintiffs' claims.  (See, e.g., Dkt. 34, Reply at 17 & n. 8); (Dkt. 39, Notice of Agency Action

6    Related to Pending Motions).  To the extent any such developments bear on the specific relief

7    requested by plaintiffs in a renewed motion for preliminary injunction, the parties shall address

8    these developments in their briefing.

9    **CONCLUSION**

10   Based on the foregoing, IT IS ORDERED THAT:

11   1.  Defendants' Motion to Dismiss [ ] **(Document No. 27)** is **denied**.

12   2.  Defendants shall file their Answer no later than **August 10, 2021**.

13   3.  Plaintiffs' Motion for Preliminary Injunction **(Document No. 29)** is **denied without**

14   **prejudice**.

15   4.  Movant Immigration Reform Law Institute's Unopposed Motion for Leave to File Amicus

16   Curiae Memorandum [ ] **(Document No. 36)** is **denied as moot**.

17   5.  The hearings set for August 5, 2021, are hereby **vacated**.

18   Dated this 27th day of July, 2021.

19                                                            /s/
                                                   Fernando M. Olguin
20                                              United States District Judge

21

22

23

24

25

26

27

28